UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-193 (KMM/JFD)
Criminal No. 25-194(4) (KMM/JFD)

UNITED STATES OF AMERICA,

Plaintiff,

v.

ABRAHAM VICTOR,
a/k/a "Macco,"

Defendant.

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

In May 2025, a federal grand jury returned two separate indictments against Defendant Abraham Victor, respectively charging Mr. Victor with burglarizing a post office in May 2020 and participating in a gang-related bank fraud scheme between April 2019 and January 2024. On November 10, 2025, Mr. Victor pled guilty to two counts of post office burglary, *see* Crim. No. 25-193, and one count of conspiracy to commit bank fraud, *see* Crim. No. 25-194. Pursuant to U.S.S.G. §§ 3D1.2 and 3D1.4, for purposes of sentencing, the offenses on the separate indictments are subject to grouping, meaning he will be subject to a single sentence for his convictions on both indictments. Consistent with the terms of the parties' plea agreement, the government respectfully asks the Court to impose a sentence of 24 months in prison.

## **THE OFFENSE CONDUCT**

During the widespread protests in Minneapolis following the killing of George Floyd, Mr. Victor and others twice burglarized the same U.S. Post Office in the same day. At approximately 3:25 a.m. on Mary 29, 2020, Mr. Victor and two others broke through multiple glass doors at the Powderhorn Station in Minneapolis, accessed the facility, and rifled through approximately 40 packages on the workroom floor. Following the break-in, the Postal Service closed the Powderhorn Station and secured the customer entrance with plywood. But approximately 20 hours after the initial break-in, Mr. Victor returned to the Powderhorn Station and did it again. Mr. Victor broke into the building, accessed the workroom floor, and then rifled through and stole packages. The total known losses were calculated at $8,028.40.

Following the burglary, law enforcement began investigating Mr. Victor as a possible suspect, and a review of his social media accounts revealed posts that were indicative of Mr. Victor's ongoing involvement in a check fraud scheme. Law enforcement obtained a warrant to search Mr. Victor's digital devices, and the subsequent search provided confirmation: Mr. Victor was actively engaged in a multi-faceted bank fraud scheme perpetrated by members and associates of the Lows gang. The fraud scheme involved creating and depositing fraudulent checks and then withdrawing those fraud proceeds to enrich themselves and further the activities of the Lows gang.

Specifically, Mr. Victor and other conspirators used social media to recruit individuals (i.e., "money mules") with existing bank accounts at various financial institutions, including Wells Fargo, JP Morgan Chase, Bank of America, to provide their personal banking information for use in the check fraud scheme. Mr. Victor and his co-conspirators then created the false checks, which were made out to those money mules. The false checks were deposited into the money mules' accounts, and the funds quickly withdrawn and provided to Mr. Victor and his co-conspirators. In total, Mr. Victor and his co-conspirators coordinated the deposit of at least 28 fraudulent checks and attempted to withdraw more than $175,000.

In the course of their scheme, which included the above and similar tactics, Mr. Victor and his co-conspirators attempted to unlawfully withdraw nearly $72,000. The intended loss from the scheme, however, was approximately $217,000.

## **SENTENCING RECOMMENDATION**

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id.* at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based

on the facts in arriving at an appropriate sentence.  *Id.* at 49–50; *see also United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

## A.    Sentencing Guidelines Range

Mr. Victor entered a guilty plea on November 10, 2025.  Per the plea agreement, the parties agreed that the adjusted offense level for conspiracy to commit bank fraud offense was 17 (base offense level of seven, increased by 10-levels because of the intended loss), which is increased by two levels based on the post office burglary convictions, pursuant to the multiple count adjustment provisions at U.S.S.G. § 3D1.4.  With a three-level reduction for acceptance of responsibility, the stipulated adjusted offense level was 16.  The parties anticipated a criminal history category of II, which, with an adjusted offense level of 16, would result in an advisory guidelines range of 24 to 30 months.

The pretrial services report provides that the adjusted offense level should be two levels higher than that anticipated by the parties—for the conspiracy to commit bank fraud offense, the pretrial services report includes a two-level increase because there were at least 10 victims between the banks that suffered actual loss and victim accountholders whose means of

4

identification were used without authority.  The pretrial services report also calculates Mr. Victor's criminal history category at III.  With an adjusted offense level of 18 and a criminal history category of III, the guidelines imprisonment range is 33 to 41 months.

## B.    Section 3553(a) Sentencing Factors

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities."  18 U.S.C. § 3553(a).

### 1.    Nature and Circumstances of the Offense

The nature and circumstances of the offense weigh in favor of a custodial sentence.  Mr. Victor sought to profit from the chaos on the streets of Minneapolis during the widespread protests in May 2020 by twice burglarizing the same Post Office.  And at the same time, Mr. Victor sought to profit by stealing money from financial institutions through a multifaceted check-fraud scheme.  He procured stolen checking account information from dark-web messaging platforms.  He recruited witting co-conspirators with active bank accounts to assist.  He generated fake checks that purported to transfer money from the valid accounts whose data Mr. Victor unlawfully procured to the

witting co-conspirators.  He directed those co-conspirators to withdraw the funds quickly to avoid bank detection.  And he perpetrated this fraud not only to enrich himself, but as part of, and to further the activities of, the violent Lows gang.

The brazen disregard for the law and the efforts to recruit others into his unlawful scheme all militate in favor of a considerable term of imprisonment.

### 2.    History and Characteristics of the Defendant

As the separate indictments demonstrate, Mr. Victor's criminal activity was multi-faceted and pervasive.  Along with the post office burglary—a crime of opportunity—Mr. Victor engaged in gang-related fraud activity over a five-year span—a sustained crime of exploitation and deceit.  Moreover, Mr. Victor has two juvenile convictions, including a firearms offense, and a misdemeanor property offense from March 2020—that is, just three months before he burglarized the post office.  Although Mr. Victor's sentence for the March 2020 misdemeanor offense was stayed, Mr. Victor repeatedly violated the terms of his probation and has an active warrant for that case.  Further, Mr. Victor has three active warrants for separate pending criminal cases.  This record demonstrates persistent criminality unabated by non-carceral consequences.  Accordingly, Mr. Victor's history and characteristics supported a meaningful carceral sentence.

### 3. Deterrence, Respect for the Law, and Protecting the Public

The Court must also consider the need for the sentence to afford adequate deterrence, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a). The nature of the instant offenses, when considered alongside Mr. Victor's prior criminal convictions and outstanding arrest warrants, underscores the extent of Mr. Victor's disregard for the law. The interests of deterrence and just punishment support a considerable term of imprisonment.

### 4. The Need to Avoid Unwarranted Disparities Among Similarly Situated Defendants

Judicial sentencing information analyzed by the U.S Probation Office reveals that between 2020 and 2024, there were 55 defendants whose primary guideline was U.S.S.G. § 2B1.1 with a final offense level of 18 and a criminal history category of III *(n.b.* this figure excludes defendants who received a sentencing departure for substantial assistance under U.S.S.G. § 5K1.1). For those defendants, the average length of imprisonment imposed was 28 months and the median length of imprisonment was 30 months.

Accordingly, the government's requested sentence of 24 months' imprisonment is less than the average and median sentence for similarly situated defendants.

## CONCLUSION

At 27 years old, Mr. Victor has spent most his adult life committing crime, though he has never spent a day in prison. Prior remedial efforts through probation failed to deter Mr. Victor. A term of imprisonment is therefore necessary. Consistent with the terms of the plea agreement, the government respectfully recommends a term of imprisonment of 24 months— a sentence below both the advisory guidelines range and the average and median sentence for similarly situated defendants.

Dated: April 17, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*s/ Garrett S. Fields*
GARRETT S. FIELDS
DAVID M. CLASSEN
Assistant U.S. Attorneys